UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CRIMINAL CASE |
| v. | : | NO.: 2:20-CR-030-SCJ-JCF |
| | : | |
| ROCKY CREED KELLY | : | |

**ORDER and FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion To Suppress Evidence. (Doc. 18). For the reasons discussed below, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

**Factual And Procedural Background**

On October 9, 2019, James Rives, Special Agent with the Bureau of Immigration & Customs Enforcement (ICE), Homeland Security Investigations (HSI), applied for a search warrant to authorize the search of 107 [redacted] Road in Talking Rock, Georgia for evidence of violations of 18 U.S.C. § 2252(a)(4), i.e., possession of child pornography. (Doc. 18-1 at 2). The undersigned signed the search warrant (Doc. 18-2 at 2), and agents executed the warrant on October 16, 2019 (*id*. at 3). Among other things, the agents seized a Verizon Kyocera cell phone, a SanDisk, two Xboxes, and papers. (*Id*.).

In an Indictment filed July 8, 2020, the Government charged Defendant with receipt of child pornography in February 2019, in violation of 18 U.S.C. §

2252(a)(2) and (b)(1) (Count One) and possession of child pornography on a cell phone on October 16, 2019, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Two). (Doc. 1). Defendant moved to suppress all evidence law enforcement agents seized from his residence pursuant to the search warrant. (Doc. 18). The Government responded to Defendant's motion (Doc. 22), and Defendant replied (Doc. 26). With briefing on Defendant's motion complete, the undersigned now considers its merits.

## **Discussion**

Defendant argues that evidence seized pursuant to the search warrant at issue should be suppressed because (1) the warrant was unsupported by probable cause; (2) the warrant was issued based on stale information; and (3) the affidavit supporting the search warrant application was tainted by material omissions and representations. (Doc. 18 at 1).

### **I. Applicable Standards**

"Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." *United States v. Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *14 (N.D. Ga. Sept. 13, 2012) (internal quotation omitted), *adopted by* 2012 U.S. Dist. LEXIS 153867 (N.D. Ga. Oct. 26, 2012). "It is not easy for a Defendant to meet this burden, and a judicial preference is accorded searches under a warrant." *United States v. Teague*,

No. 2:10-CR-006-RWS-SSC, 2010 U.S. Dist. LEXIS 142717, at *86 (N.D. Ga. Nov. 22, 2010) (internal quotation omitted), *adopted by* 2011 U.S. Dist. LEXIS 42260 (N.D. Ga. Nov. 22, 2010).  "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *L.A. County v. Rettele*, 550 U.S. 609, 615 (2007).  The task of a magistrate judge, when issuing a warrant, " 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.' "  *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate[ judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

## II.   <u>Analysis</u>

Defendant argues that suppression is required because the search warrant was not issued on probable cause "because the affidavit alleged only that Kik Interactive reported to law enforcement that it come across **one** image depicting what is believed to be child pornography possessed by an account associated with

user XGCDEADPOO13 and that Mr. Kelly is a convicted sex offender"; "the warrant is stale, as the search was conducted [eight] months after the finding of this one single image"; and "the affidavit in support of the warrant application contained misleading statements and material omissions, without which the warrant would not have issued." (Doc. 18 at 4 (emphasis in original)).

It is not necessary to determine whether SA Rives's affidavit established the existence of probable cause to believe that evidence of a crime would be found at Defendant's residence, however, because the good faith exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984) applies in this case. *See, e.g., United States v. Jones*, 149 F. Appx 954, 963 (11th Cir. 2005) (unpublished decision) ("We need not determine whether probable cause existed, because the good faith exception applies here."); *United States v. Dos Santos*, No. 1:05-CR-613-TWT, 2006 U.S. Dist. LEXIS 55943, at *15 (N.D. Ga. June 21, 2006) ("The good faith exception is applicable to this case; therefore, this court need not reach the underlying issue of probable cause."), *adopted by* 2006 U.S. Dist. LEXIS 55944 (N.D. Ga. July 25, 2006).

The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' "

*United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).  In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court addressed the limited role of the exclusionary rule:

> The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies.  *Illinois v. Gates*, 462 U.S. 213, 223[] (1983).  Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591[] (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

*Id.* at 140.  The Court explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.* at 144.  The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."  *Id.*

In *Leon*, the Supreme Court modified the exclusionary rule to allow prosecutors to use evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."  468 U.S. at 900.  In *Martin*, the Eleventh Circuit Court of Appeals explained what has become known as the *Leon* good faith exception to the exclusionary rule:

> [*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[] (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*Martin*, 297 F.3d at 1313 (original formatting altered).

The second and fourth circumstances are not present here—there is no evidence that the issuing judge abandoned his judicial role in issuing the warrant, and the warrant sufficiently describes the person, premises, and property to be searched, and the things to be seized. Rather, Defendant's arguments in support of suppression implicate the first and third circumstances described in *Leon*—that "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," and the affidavit was so lacking in indicia of probable cause to believe that evidence of a crime would be found at Defendant's residence that official belief in its existence was unreasonable.

In the first place, the undersigned finds that the information set forth in Agent Rives's affidavit shows that it was not so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Martin*, 297 F.3d at 1313. Rives stated the following in his affidavit in support of the search warrant application:  In February 2019, Kik Interactive, LLC, an instant messaging application, reported to the Royal Canadian Mounted Patrol (RCMP) about child exploitation activity within their messaging application.  (Doc. 18-1 ¶ 8).  Microsoft's PhotoDNA identified a positive hash value match on a known image of Child Sexual Abuse Material (CSAM) possessed by Kik account XGCDEADPOO13.  (*Id*.).  Based on the IP address activity of Kik USER XGCDEAPOO13, the user was suspected of being in the United States, so RCMP sent an investigative referral to U.S. Homeland Security Investigations (HSI). (*Id*.).  The IP addresses that were captured from Kik User XGCDEADPOO13 were geolocated to Jasper, Georgia.  (*Id*.).  A Pinterest account with a URL including "xgcdeadpoo13" was associated with username "Rocky Kelly."  (*Id*. ¶ 9).

On July 1, 2019, SA Rives reviewed the Kik Messenger subscriber records for user XGCDEADPOO13, which showed that email address "xgcdeadpoo13@hotmail.com" was associated with the account, which was created on November 29, 2018 from an Android mobile device.  (*Id*. ¶ 10).  On March 5, 2019, Kik captured IP address 24.75.166.77, which returned as provider

Ellijay Telephone Company in Jasper, Georgia. (*Id.*). A birthdate of "1987-[redacted]-[redacted]" was provided for the Kik Registration Client info on November 29, 2018. (*Id.*). Rives also viewed the known imagery of CSAM possessed by KIK account XGCDEADPOO13; it is an image of an adult female giving oral sex to a minor boy estimated to be younger than the age of 12 years. (*Id.* ¶ 11). On July 3, 2019, HSI sent Ellijay Telephone Company (ETC) a subpoena for subscriber and customer information for IP address 24.75.166.77 dated March 5, 2019. (*Id.* ¶ 12). On July 4, 2019, subpoena results from ETC related to that IP address showed that it belonged to Kelly Constance, phone number 706-[redacted], address 105 [redacted] Road N, Talking Rock, Georgia 30175. (*Id.* ¶ 13). July 7, 2019 record checks of that name and address showed that Hobart Kelly and his wife Constance were the current residents of that address, and that Rocky Creed Kelly was living at 107 [redacted] Road, Talking Rock, Georgia. (*Id.* ¶ 14). Public record checks showed that Rocky Kelly, date of birth [redacted]/1987 was also living at 105 [redacted] Road in 2014. (*Id.*). The affidavit states, "Further checks revealed that Rocky KELLY is a convicted sex offender for having sex with a minor under 16 and the production and possession of child pornography. Both offenses happened on different occasions, 2008 and 2010 in Kentucky." (*Id.*). It was also noted that Rocky Kelly was the same name associated with the Pinterest account with the URL including "xgcdeadpoo13," and

Kelly's date of birth is the same date of birth provided on the Registration Client Info for Kik user XGCDEADPOO13. (*Id.*).

On July 24, 2019, SA Rives and HSI Task Force Officer Renea Green checked the 105 and 107 [redacted] Road addresses, which are in close proximity to each other and share the same 10-foot wide gravel driveway and mailbox stand. (*Id.* ¶ 15). While checking the houses, Rocky Kelly exited the back of 107 [redacted] Road and walked to 105 [redacted] Road. (*Id.*). A check on the surrounding Wi-Fi internet connections revealed only two, NETGEAR33 and NETGEAR33_EXT. (*Id.*). On August 30, 2019, HSI sent ETC a subpoena for subscriber, customer information, IP addresses, and dates of service for internet provided to the 107 [redacted] Road address. (*Id.* ¶ 16). ETC's response showed that there had never been internet service at that address; the only service that had been provided was cable service from August 27, 2014 to August 17, 2018, and the listed customer was Kelly Constance of 105 [redacted] Road, Talking Rock. (*Id.* ¶ 17). On September 9, 2019, SA Rives met with Gilmer County Deputy Jason Reed, whose assignment was to assure compliance of registered sex offenders in Gilmer County. (*Id.* ¶ 18). Kelly's sex offender reporting requirement from Kentucky only required him to report a change of address. (*Id.*). Deputy Reed verified Kelly's residence was 107 [redacted] Road, Talking Rock, Georgia, and he

advised Rives that he believes that Kelly stayed at both 107 and 105 [redacted] Road as he had met in front of both houses to assure residency. (*Id.*).

SA Rives also included a section in the warrant concerning "characteristics common to individuals with intent to collect, receive or distribute child pornography" based on his "previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom [he had] had discussions[.]" (*Id.* ¶ 19). Those characteristics included, among other things, the possession and maintenance of child pornography collections in digital or electronic format "such as a computer or other electronic storage devices" for "several years," usually at the collector's residence or vehicle. (*Id.*). Rives also included a section providing "background on computers and child pornography," including among other things, "[t]he computer's ability to store images in digital form [which] makes the computer itself an ideal repository for child pornography," the use of the internet to obtain, view, and trade child pornography, and the fact that digital information "is often maintained indefinitely until overwritten by other data." (*Id.* ¶¶ 20-26).

The undersigned finds that these allegations connect Defendant to a Kik instant messaging account on which was found an image of child pornography; they include information concerning Defendant's criminal history of sexual offenses involving minors; and additional information connects the IP address

provided by Kik to Defendant.  The Court is mindful that courts have split on the issue of whether a single image of child pornography provides sufficient probable cause to support the issuance of a search warrant.  *Compare United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2005) (finding that probable cause did not support warrant based on single incident of access to child pornography images on computer) *with United States v. McArthur*, 573 F.3d 608, 613-14 (8th Cir. 2009) (finding that evidence of single instance of possession of child pornography image that had been modified using computer software supported probable cause).  Even courts that have found similar evidence to be insufficient to support probable cause, however, have found that the good faith exception to the exclusionary rule applied.

For example, in *Raymonda*, a case cited by Defendant in support of his motion (Doc. 18 at 5), the Second Circuit found that probable cause did not support the issuance of the search warrant where the affidavit "alleged only that, on a single afternoon more than nine months earlier, a user with an IP address associated with Raymonda's home opened between one and three pages of a website housing thumbnail links to images of child pornography, but did not click on any thumbnails to view the full-sized files."  780 F.3d at 117.  The court held "that a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary

traces of that incident have likely cleared," and therefore, "the warrant issued in this case was not supported by probable cause." *Id*. The court went on to find, however, that suppression was not required because the good faith exception to the exclusionary rule applied. *Id*. at 119-20. Similarly, in *United States v. Ohlson*, No. 11-CR-225-A, 2012 U.S. Dist. LEXIS 36009 (W.D. N.Y. Mar. 16, 2012), the court found that the search warrant was not supported by probable cause where it "showed that a person accessed an indeterminate number of images of child pornography during on, relatively short, five-day period" more than a year before the warrant was issued, "without a showing that a person intentionally retained any images of child pornography." *Id.* at *10-13. The court nevertheless found that suppression was not required because "the exclusionary rule of the Fourth Amendment does not require the suppression of the evidence seized from the defendant's residence because of the executing law enforcement agents' objectively reasonable reliance on the warrant," and therefore the good faith exception to the exclusionary rule applied. *Id*. at *13-16.

Defendant also argues that "[e]ven if the Court finds that the facts in the warrant application affidavit supported probable cause to search [his] home in February 2019 [when the Kik image was reported], this evidence was stale by the time the government applied for the warrant eight months later." (Doc. 18). "[P]robable cause must exist when the magistrate judge issues the search warrant."

*United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). Therefore, "the information supporting . . . the [G]overnment's application for a search warrant must be timely.*" Id.*; *see also Martin*, 297 F.3d at 1314 ("The information in the affidavit must also be fresh."). There is no rule that sets out "arbitrary time limitations for presenting information to a magistrate." *Harris*, 20 F.3d at 450. Rather, courts review staleness challenges on a "case-by-case" basis, taking into consideration "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.* Here, even if the information about the image from February 2019 was stale by the time agents sought a warrant in October 2019, that gap does not show that probable cause was so lacking as to make official belief in its existence unreasonable. *See, e.g.*, *United States v. Bridges*, No. 2:08-CR-011-WCO-SSC, 2008 U.S. Dist. LEXIS 138216, at *23 (N.D. Ga. June 30, 2008) ("Although over 9 months elapsed from the date on which the child pornography website was accessed . . . until the affidavit was completed . . ., courts have held in similar cases that such lapses in time do not undermine the finding of probable cause." (collecting cases)), *adopted by* 2008 U.S. Dist. LEXIS 138213 (N.D. Ga. Sept. 2, 2008).

The undersigned finds that it was not unreasonable for Agent Rives "to believe that what he wrote in the affidavit would be sufficient to support a finding

of probable cause," nor was it unreasonable for the agents executing the warrant to believe that it was supported by probable cause. *Martin*, 297 F.3d at 1315. Rather, "[t]he affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid." *Id.* Thus, Defendant has not shown that the third *Leon* circumstance has been met.

Finally, Defendant asserts that Rives's affidavit misled the issuing judge by including "several misrepresentations and omissions that, when taken into consideration, negate a finding of probable cause," and he requests that the Court hold an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 18 at 8-9). In *Franks*, "the Supreme the Supreme Court addressed the first exception to the application of the good faith doctrine of Leon – whether a defendant has the right to challenge the truthfulness of factual statements made in an affidavit in support of a search warrant." *United States v. Skow*, No. 1:11-CR-373-CAP-ECS, 2012 U.S. Dist. LEXIS 142668, at *9-10 (N.D. Ga. Sept. 13, 2012), *adopted by* 2012 U.S. Dist. LEXIS 142091 (N.D. Ga. Oct. 1, 2012). "Entitlement to a *Franks* hearing requires a defendant to make a 'substantial preliminary showing' establishing (1) the affiant deliberately or recklessly included a false statement, or failed to include material information, in the warrant affidavit; and (2) the allegedly false statement or omission was necessary to the finding of probable cause." *United States v. Gray*, 544 Fed. Appx. 870, 882 (11th Cir. 2013)

(unpublished decision) (citing *Franks*, 438 U.S. at 155-56). "The defendant's attack must be 'more than conclusory,' " and " '[a]llegations of negligence or innocent mistake are insufficient.' " *Id.* (quoting *Franks*, 438 U.S. at 171). "Allegations of deliberate falsehood or reckless disregard for the truth 'must be accompanied by an offer of proof.' " *United States v. Rousseau*, 628 Fed. Appx. 1022, 1023 (11th Cir. 2015) (unpublished decision) (quoting *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006)). Moreover, " 'even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause.' " *Gray*, 544 Fed. Appx. at 882 (quoting *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997)). "[T]he defendant must show that, if the misrepresentations were removed from, or the omitted facts were included in, the warrant affidavit, then probable cause would be lacking." *Rousseau*, 628 Fed. Appx. at 1023. "If the warrant would still support probable cause, then no hearing is necessary." *Id.*

The purported omissions and misrepresentations identified by Defendant are as follows:

- The affidavit "failed to mention" that on March 5, 2009, the date Kik captured IP address 24.75.166.77 in connection with user account XGCDEADPOO13, Kik also "captured IP address 174.223.3.168, with a physical location of Birmingham, AL."

- The affidavit misrepresented Defendant's criminal history by stating that he was convicted of production of child pornography.
- The affidavit misrepresented Defendant's criminal history because "[h]e is not a registered sex offender for a misdemeanor conviction of sexual abuse of a minor when he was 20 years old. His only conviction that could arguably be relevant, his conviction for possession of child pornography, is almost ten years old."

(Doc. 18 at 8-9). The undersigned finds that none of these representations is sufficient to satisfy Defendant's burden under *Franks*, and they fail to demonstrate that the first *Leon* circumstance is met, i.e., that the issuing judge was misled by information Rives knew or should have known was false, nor has he shown entitlement to a hearing under *Franks*.

In the first place, Defendant has not made a "substantial preliminary showing" to show that SA Rives deliberately or recklessly misrepresented information or omitted information in his affidavit. *Gray*, 544 Fed. Appx. at 882. Moreover, Defendant has not shown that if the misrepresentations were omitted, or the missing information included, probable cause would be so lacking as to render official belief in its existence unreasonable. First, as to his criminal history, the Government does not dispute that Defendant was not convicted of *production* of child pornography as the affidavit states (*see* Doc. 22 at 8; *see also* Doc. 18-1 ¶

14), but it remains the case that Defendant was convicted of a sexual offense with a minor and of *possession* of child pornography as stated in the affidavit.  (Doc. 18-1 ¶ 14; *see also* Doc. 18 at 7-9).   Even if the misstatement about Defendant's conviction for production of child pornography were omitted from the affidavit, its omission would not alter the probable cause determination.  The fact also remains that Defendant was a registered sex offender as correctly stated in the affidavit (Doc. 18-1 ¶ 14) and as Defendant admits (Doc. 18 at 8; Doc. 26 at 6 n.18).  The affidavit did not say that he was required to register as a sex offender as a result of his sexual offense involving a minor as Defendant appears to assert.  (Doc. 18 at 9; *see also* Doc. 26 at 6).   Rather, the affidavit simply states Defendant was "a convicted sex offender for having sex with a minor under 16 and the production and possession of child pornography," and that Defendant's "sex offender reporting requirement from Kentucky is only report change of address."  (Doc. 18-1 ¶¶ 14, 18).  Defendant has not shown that that information was false or that Rives knowingly or recklessly included false information about Defendant's criminal history.  Finally, Defendant asserts that his conviction for possession of child pornography was almost ten years old (Doc. 18 at 9), but the affidavit stated that his prior convictions were in 2008 and 2010 (Doc. 18-1 ¶14), and therefore that information was included in the affidavit.

Next, as to omission of information concerning an IP address "with a physical location of Birmingham, AL" (Doc. 18 at 9), Defendant offered no evidentiary submission, such as an affidavit or other document, to support his assertions about that IP address. In response, the Government does not dispute that SA Rives did not include information in the affidavit about the IP address identified by Defendant in his motion. (*See* Doc. 22 at 4-8). Defendant contends that the Government does not dispute his assertions, including "that the agent did not disclose to the Court this second IP address," and therefore "[a]n offer of proof is not necessary where the government has conceded that the record supports the facts presented by [Defendant]." (Doc. 26 at 7). Defendant misapprehends the Government's position. While the Government does not dispute that the affidavit did not include information about a second IP address, the Government correctly argues that Defendant has not made an offer of proof that SA Rives omitted that information intentionally or with reckless disregard of the truth. (Doc. 22 at 4). Moreover, the Government clearly disputes the significance of that IP address to the determination of probable cause, in particular as to Defendant's apparent contention that the second IP address somehow shows that the user of the Kik account could have been located in Birmingham, Alabama, thus undermining a finding of probable cause as to Defendant's Talking Rock, Georgia residence. The Government represents that the second IP address was associated with a "mobile-

LTE" network owned by Verizon Wireless, so "that does not mean that the Verizon customer using the IP address is physically in Birmingham."[1] (Doc. 22 at 5-6). The Government points out that the IP address discussed in the affidavit was owned by ETC, which was located in Jasper, Georgia, not Talking Rock, thus demonstrating that the "location" of the entity which owns the IP address is not necessarily the same as the person using the IP address. (*Id.* at 7). The undersigned agrees that even if SA Rives included the information about the second IP address in the affidavit, it would not undermine the finding of probable cause.

Defendant argues, however, that "the Magistrate Court was not provided this information and thus the Magistrate could not consider whether or not this contradictory information affected its probable cause finding." (Doc. 26 at 6-7). But additional information known to SA Rives that he did not include in the affidavit can provide sufficient indicia of probable cause to determine that his reliance on the warrant was reasonable. *See, e.g., United States v. Bridges*, 347 Fed. Appx. 459, 463 (11th Cir. 2009) (finding that the investigator's "affidavit and the additional facts known to him that were omitted from the affidavit contained enough indicia of probable cause to determine that his reliance on the warrant was reasonable"); *see also Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *27 (finding that

[1] The Government submitted an activity log generated by Kik on March 5, 2019 which supports the Government's contentions. (Doc. 25 (sealed)).

the officers "had an objectively reasonable basis to believe that the warrant was valid" based on the information contained in the affidavit as well as information not included in the affidavit). Defendant has not supported his contention that the omission of information concerning a second IP address was material to the probable cause determination or that SA Rives's omission of that information was done knowingly or recklessly.

Defendant has not shown that any of the circumstances described in *Leon* have been met here. Moreover, there is no evidence that Agent Rives's conduct in seeking the warrant or the agents' conduct in executing the warrant was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Nor is there evidence that the agents engaged in "deliberate, reckless, or grossly negligent conduct," such that exclusion of the evidence seized is warranted. *Id.* It is therefore **RECOMMENDED** that Defendant's motion to suppress evidence seized from his residence pursuant to the October 9, 2019 search warrant (Doc. 18) be **DENIED**.

**Summary**

It is **RECOMMENDED** that Defendant's Motion To Suppress Evidence (Doc. 18) be **DENIED**.

**IT IS FURTHER ORDERED** that, subject to a ruling by the District Judge

on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 12th day of January, 2021.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge